**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

**CASE NO.: 0:13-CV-61770-ROSENBAUM/HUNT**

**YECHEZKEL RODAL,**

      **Plaintiff,**

**v.**

**SIRIUS XM RADIO, INC.,**

      **Defendant.**

_____/

**MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS FOR
FAILURE TO STATE A CLAIM AND INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      BACKGROUND ......................................................................................................... 2

    A.      Summary Of Rodal's Allegations .............................................................. 2

    B.      Sirius XM's Customer Agreement Governs Any Past, Present Or Future Claim Or Dispute, Whether Related To The Agreement Or Otherwise ............... 2

    C.      Rodal Is Bound By The Customer Agreement ...................................................... 4

II.     ARGUMENT ............................................................................................................. 4

    A.      Rodal Must Arbitrate His Claims As Required By His Customer Agreement With Sirius XM ...................................................................... 4

        1.      A Valid Written Arbitration Agreement Exists .......................................... 6

        2.      An Arbitrable Issue Exists Because Rodal's Claims Are Within The Scope Of The Arbitration Agreement................................................. 8

        3.      Sirius Has Not Waived Its Right to Arbitration...........................11

    B.      Alternatively, Rodal Has Failed To State A Claim Upon Which Relief Can Be Granted ...................................................................................................... 12

        1.      Legal Standard ..................................................................................... 12

        2.      Rodal Fails To Allege Any Facts To Support Allegations That Sirius XM Called His Wireless Number Using An Automated Telephone Dialing System................................................................... 13

        3.      Rodal Did Not Allege That He Complied With The Informal Dispute Resolution Procedures Of The Customer Agreement ...................... 14

III.    CONCLUSION........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 663 (2009)...................................................................................................12

*Assoc. Mech. Contr. V. Martin K. Eby Const.,*
    271 F. 3d 1309, 1317 (11th Cir. 2001) …...........................................................14

*AT&T Mobility v. Concepcion,*
    131 S. Ct. 1740, 1745 (2011) …...........................................................................11

*AT&T Techs., Inc. v. Commn'cs Workers of Am.,*
    475 U.S. 643, 649-50 (1986) …........................................................................9

*Bank of America v. Putnal Seed and Grain,*
    965 So. 2d 300, 302 (Fla. 1st DCA 2007) …….....................................................14

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................................12, 14

*Bischoff v. DirecTV, Inc.,*
    180 F. Supp. 2d 1097, 1105, 1116 (C.D. Cal. 2002)………….................................8

*Brown v. ITT Consumer Fin. Corp.,*
    211 F.3d 1217 (11th Cir. 2000) .............................................................9

*Caley v. Gulfstream Aerospace Corp.,*
    428 F.3d 1359 (11th Cir. 2005) .............................................................5

*Citizens Bank v. Alafabco, Inc.,*
    539 U.S. 52, 56 (2003) …………….......................................................5

*Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 (1985)....................................................................4

*Duran v. Wells Fargo Bank, N.A.,*
    878 F. Supp. 2d 1312 (S.D. Fla. 2012) ..................................................13

*E.E.O.C. v. Waffle House, Inc.,*
    534 U.S. 279 (2002)................................................................4, 9

*First Options of Chicgo, Inc. v. Kaplan,*
    514 U.S. 938, 945(1995) ...........................................................9

*Foley v. Wells Fargo Bank, N.A.,*

849 F. Supp. 2d 1325, 1347 (M.D. Ala. 2012) … ..................................................12

*Green v.Life & Health of America,*
704 So.2d 1386, 1391 (Fla. 1998) ….......................................................................10

*Higgs v. Auto. Warranty Corp. of Am.,*
134 F. App'x 828 (6th Cir. 2005) ..............................................................................7

*Hill v. Gateway 2000, Inc.,*
105 F.3d 1147 (7th Cir. 1997) ...................................................................................7

*Ibey v. Taco Bell Corp.,*
No. 12-cv-00583, 2012 WL 2401972 (S.D. Cal. June 18, 2012) ...........................13

*Johansen v. Vivant, Inc.,*
No. 12-C-07159, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2012)........................13,14

*Knutson v. ReplyA, Inc.,*
No. 12-cv-01267, 2011 WL 291076 (S.D. Cal. Jan. 27, 2011) ..............................13

*Knutson v. Sirius XM Radio Inc.,*
No. 12-00418, 2012 WL 1965337 (S.D. Cal. May 31, 2012) .........................1, 6, 10

*Mamani v. Berzain,*
654 F.3d 1148 (11th Cir. 2011) ...............................................................................11

*Marshall Cty. Bd. of Educ. v. Marshall Cnty. Gas Dist.,*
992 F.2d 1171, 1174 (11th Cir. 1993) ….. ..............................................................12

*Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P.,*
670 F. Supp. 2d 1350 (S.D. Fla. 2009) ....................................................................5

*Meridian Project Sys., Inc. v. Hardin Constr. Co.,*
426 F. Supp. 2d 1101 (E.D. Cal. 2006)....................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983)......................................................................................................9

*Nat'l Envtl. Found. v. ABC Rail Corp.,*
926 F.2d 1096, 1097 (11th Cir. 1991) ….. ..............................................................14

*Neitzke v. Williams,*
490 U.S. 319, 326-327 (1989) ….. ...........................................................................12

*Picard v. Credit Solutions, Inc.,*
564 F.3d 1249 (11th Cir. 2009) ................................................................................4

*Rampersad v. Primeco Pers. Commc'ns, L.P.*,
  No. 01-6640, 2001 WL 34872572 (S.D. Fla. Oct. 16, 2001) ....................................7

*Rivera v. AT & T Corp.*,
  420 F. Supp. 2d 1312 (S.D. Fla. 2006) .............................................................6

*Schatt v. Aventura Limosuine & Trans. Serv., Inc.*,
  No. 10-22353, 2010 WL 4942654 (S.D. Fla. Nov. 30, 2010) ...............................9

*Seifert v. United States Home Corp.*,
  750 So. 2d 633 (Fla. 1999)............................................................................5

*Shea v. BBVA Compass Bancshares, Inc.*,
  No. 12-23324, 2013 WL 869526 (S.D. Fla. Mar. 7, 2013).................................10

*Sherr v. Dell, Inc.*,
  No. 05-10097, 2006 WL 2109436 (S.D.N.Y. July 27, 2006)...............................7

*Solymar Invs., Ltd. V. Banco Santander SA*,
  672 F.3d 981,989 (11th Cir. 2012) ……. ...........................................................9

*TracFone Wireless, Inc. v. Pak China Grp. Co.*,
  843 F. Supp. 2d 1284 (S.D. Fla. 2012) .............................................................7

*United States v. Ballinger*,
  395 F.3d 1218 (11th Cir. 2005) .......................................................................5

*Williams v. MetroPCS Wireless, Inc.*,
  No. 09-22890, 2010 WL 1645099 (S.D. Fla. Apr. 21, 2010) ...............................7

## STATUTES

9 U.S.C.A. § 1 ..............................................................................................1

9 U.S.C.A. § 4 ..............................................................................................5

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)...............................................................1, 2, 12, 13

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS FOR FAILURE TO STATE A CLAIM</u>

Pursuant to the Federal Arbitration Act (9 U.S.C. § 1, et seq.) (FAA), Defendant Sirius XM Radio Inc. ("Sirius XM") moves this Court for an order dismissing the Complaint filed by Plaintiff Yechezkel Rodal ("Rodal") and compelling compliance with the agreement between Rodal and Sirius XM to resolve their disputes through arbitration.  Rodal leased a car that included a satellite radio receiver and a 90-day trial subscription to the satellite radio service provided by Sirius XM.  A Customer Agreement that Sirius XM provided to Rodal governs any dispute between the parties.  On August 15, 2013, Rodal filed suit in this Court alleging that he received multiple calls from Sirius XM on his cellular telephone in violation of the Telephone Consumer Protection Act ("TCPA").  But the Customer Agreement requires the parties to attempt to informally resolve any dispute between them and, if unsuccessful, to arbitrate the dispute.  In a similar case, a district court in California dismissed a lawsuit filed against Sirius XM in view of the same arbitration clause that is at issue here, sending the parties in that case to arbitration.  *See Knutson v. Sirius XM Radio Inc.*, No. 12-00418, 2012 WL 1965337 (S.D. Cal. May 31, 2012), *appeal* docketed, No. 12-56120 (9th Cir. June 18, 2012).

Rodal's complaint, moreover, includes no facts to support his conclusory allegation that the calls purportedly made by Sirius XM were placed via an automatic telephone dialing system, a necessary element of any TCPA claim.  In the alternative to compelling arbitration, Sirius XM moves this Court for an order dismissing Rodal's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  Rodal's Complaint should also be dismissed because he failed to allege, and likely cannot allege compliance with the informal resolution dispute mechanism which he is contractually obliged to follow.

## I.      BACKGROUND[1]

Sirius XM provides a satellite radio service that currently broadcasts more than 140 channels of commercial-free music, sports, news, talk, entertainment, traffic, and weather to more than 25 million subscribers.  *See* Ruhland Dec. ¶ 3.  Sirius XM has arrangements with major automakers to install satellite radios in new vehicles so that purchasers and lessees can receive a trial subscription to Sirius XM's satellite radio service.  *Id*.  Sirius XM is obligated to provide satellite services during the designated trial period to automobile purchasers and lessees who want those services.  *Id.* ¶ 4.

### A.      Summary Of Rodal's Allegations.

Rodal leased a vehicle that included a 90-day trial subscription to Sirius XM's satellite radio service.  Compl. ¶ 14.  Following his trial subscription, Rodal alleges that he received unauthorized calls to his cellular telephone in violation of the TCPA urging him to purchase a new subscription.    *Id*. ¶¶ 18, 22, 27.  Rodal asserts that "*[u]pon information and belief*, Defendant . . . placed the calls . . . by using an automatic telephone dialing system to [Rodal's] cellular telephone, 954-xxx-9996." *Id.* ¶ 17 (emphasis added).

### B.      Sirius XM's Customer Agreement Governs Any Past, Present Or Future Claim Or Dispute, Whether Related To The Agreement Or Otherwise.

Sirius XM sends each individual who receives a trial subscription a Customer Agreement at the time of purchase or lease of a vehicle, and that agreement governs any disputes that arise between the parties.  Ruhland Dec. ¶ 4.  The first paragraph of Sirius XM's Customer Agreement states:  "This customer agreement . . . between you and Sirius XM Radio Inc . . . applies to your

---

[1]  For purposes of this Motion only, Sirius XM assumes the truth of Rodal's allegations.  In fact, though, Sirius XM disputes them.  Sirius XM files the Declaration of Elizabeth Ruhland ("Ruhland Dec.") for purposes of addressing the issues relevant to the arbitration request.  *See* **Exhibit "1"** attached hereto.

paid, *trial* or other subscription . . ."  *See id.*, Ex. B (opening paragraph) (emphasis added).  The

Customer Agreement also contains an arbitration provision.

       Specifically, Section I (**RESOLVING DISPUTES**) states in all-capital letters:

> PLEASE READ THIS PROVISION OF THIS SECTION
> CAREFULLY.  IT PROVIDES THAT ANY DISPUTE MAY BE
> RESOLVED BY BINDING ARBITRATION.  BY AGREEING
> TO ARBITRATION, YOU ARE HEREBY WAIVING THE
> RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A
> JURY . . . .

*Id*. § I.  The dispute resolution section of the Customer Agreement requires that either party

wishing to bring a claim against the other wait for sixty (60) days after attempting to informally

resolve the dispute, before turning to formal resolution.  *See id*. § I.1.  If a claim has not been

informally resolved, upon election of either party, the Customer Agreement requires the parties

to arbitrate the dispute before the American Arbitration Association.  *See id*. § I.2.  The

Customer Agreement governs "any Claim . . . whether related to this Agreement or otherwise,

including past, present, and future Claims and disputes, and including any dispute as to the

validity or applicability of this arbitration clause . . . ."  *Id.*  The arbitration clause of the

Customer Agreement applies to any claim between the a customer and Sirius XM. *Id.*

       The Customer Agreement provides each party who accepts a trial subscription the

opportunity to contact Sirius XM to cancel the trial subscription if the party does not agree to the

terms of the Customer Agreement, at which point Sirius XM is relieved of its obligation to

provide the party with its satellite subscription service.  *See id*. (Introduction) ("IF YOU DO

NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL

CANCEL YOUR SUBSCRIPTION.  IF YOU DO NOT CANCEL YOUR SUBSCRIPTION

WITHIN 3 BUSINESS DAYS OF ACTIVATION OF YOUR RECEIVER, IT WILL MEAN

THAT YOU AGREE TO THIS AGREEMENT WHICH WILL BE LEGALLY BINDING ON YOU.").

### C.     Rodal Is Bound By The Customer Agreement.

Rodal's trial subscription was activated on December 17, 2012, and was in effect through March 17, 2013. *See* Ruhland Dec. ¶¶ 3, 13. Sirius XM was thus obligated to provide Rodal with access to its satellite radio services during the full 90-day period unless Rodal contacted Sirius XM to cancel his trial subscription. *Id.* ¶ 4.

Sirius XM mailed Rodal a Welcome Kit on January 11, 2013. *Id.* ¶¶ 16-17. The Welcome Kit included Sirius XM's then-current Customer Agreement (as of May 11, 2012). *Id.* ¶¶ 18-20.[2] Sirius XM has no record of Rodal contacting Sirius XM to cancel his trial subscription, and Rodal did not plead that he sought to cancel his service. *Id.* ¶ 21. Rodal is therefore bound by the terms of the Customer Agreement and its dispute resolution provisions, including arbitration.

## II.     ARGUMENT

### A.     Rodal Must Arbitrate His Claims As Required By His Customer Agreement With Sirius XM.

Courts are required to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Indeed, Congress enacted the FAA in order "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citation and internal quotation marks omitted).

The FAA provides for enforcement of agreements to arbitrate within the full reach of the Commerce Clause. *Picard v. Credit Solutions, Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009) (citing

---

[2] That Customer Agreement is attached to the Ruhland Declaration as Exhibit B. *Id.* ¶ 19.

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003)).  To ensure enforcement of arbitration clauses, Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

The arbitration clause here was in writing, and it is well settled that telecommunications networks, such as radio broadcast frequencies, are channels of interstate commerce.  *See, e.g.*, *United States v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005).  Further, Sirius XM, a Delaware company, provided services to Rodal who is a Florida Resident.[3]  DE 1 at ¶ 9 ("At all times relevant to this complaint SIRIUS engages in 'interstate communications' as defined by the TCPA.")  Accordingly and because Sirius XM is engaged in interstate commerce, the terms of the Customer Agreement clearly fall within the ambit of the FAA.

When ruling on a motion to compel arbitration, Florida courts consider the following three elements: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.  *See, e.g.*, *Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P.*, 670 F. Supp. 2d 1350, 1354 (S.D. Fla. 2009); *Seifert v. United States Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999).  In determining whether an agreement to arbitrate exists, courts apply state contract law, while still taking into consideration the federal policy favoring arbitration.  *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005).

---

[3] Rodal even asserts that Sirius XM is engaged in interstate commerce in his Complaint. *See* [D.E. 1-3].  Rodal also allegedly contacted Sirius XM's office in New York to request the cessation of phone calls. *See* [D.E. 1-1 at 1].

Here, all three factors are present. Accordingly, the instant dispute should be subject to arbitration.

### 1.     A Valid Written Arbitration Agreement Exists.

In a case raising identical legal and factual issues to the instant action, a federal district court recently dismissed a case against Sirius XM in favor of arbitration after finding the arbitration provision in Sirius XM's Customer Agreement valid and enforceable. *See Knutson*, 2012 WL 1965337.  In *Knutson*, the plaintiff alleged that he received unauthorized calls to his cellular telephone in violation of the TCPA. *Id.* at *1.  In rejecting the plaintiff's argument that the Customer Agreement was not enforceable because it was received after the activation of the trial subscription, the Court noted the practical considerations involved in selling services to mass consumers which make it acceptable for terms and conditions to follow initial transactions. *Id.* at *3-4.  The Court found that it would be impractical for Sirius XM, a large service provider, to address the terms of its Customer Agreement with each consumer prior to activating service. *Id.*  The Court also found that the "Resolving Disputes" section of the Customer Agreement was conspicuously placed and contained numerous consumer-friendly provisions (including the commitment to reimburse a subscriber's administrative filing fee in the event the subscriber is successful in arbitration). *Id.* at *3, *7-8.

As in *Knutson*, this Court should uphold the arbitration clause in the "Resolving Disputes" section of the Customer Agreement.  This Court has enforced arbitration agreements in circumstances similar to those here.  For example, in *Rivera v. AT & T Corp.*, 420 F. Supp. 2d 1312, 1320 (S.D. Fla. 2006), AT & T mailed a customer service agreement that included an arbitration provision.  The agreement required the customer to call to cancel the service immediately if the customer did not accept the terms. *Id.* at 1315.  The customer failed to do so and the Court determined that the customer was therefore bound by the agreement and its

6

arbitration clause. *Id.* at 1320-23; *see also Rampersad v. Primeco Pers. Commc'ns, L.P.*, No. 01-6640, 2001 WL 34872572, at *2 (S.D. Fla. Oct. 16, 2001) ("Defendant's brochures put Plaintiff on notice that rates and services were subject to terms and conditions. By taking the risk and activating service without successfully procuring and reading these terms and conditions, Plaintiff bound himself to arbitration.").

Agreements where the terms of a contract are sent after the initial purchase are commonplace and well accepted as binding contracts in this and other courts. *See*, *e.g.*, *TracFone Wireless, Inc. v. Pak China Grp. Co.*, 843 F. Supp. 2d 1284, 1298-99 (S.D. Fla. 2012) (holding that "shrinkwrap contracts," in which an agreement becomes effective as soon as a customer opens a product, are valid in Florida); *Williams v. MetroPCS Wireless, Inc.*, No. 09-22890, 2010 WL 1645099, at *6 (S.D. Fla. Apr. 21, 2010) (citing *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1150 (7th Cir. 1997)) (holding that a customer accepted the Terms and Conditions of service, including an arbitration clause, after she received them and continued to use MetroPCS services and stating that "MetroPCS has the right to specify the kind of conduct that will constitute acceptance" even though the plaintiff denied reading the Terms and Conditions). *See also Higgs v. Auto. Warranty Corp. of Am.*, 134 F. App'x 828 (6th Cir. 2005) (holding an arbitration clause valid when a plaintiff received a warranty contract containing an arbitration clause after purchase); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (holding an arbitration clause valid in an agreement where the customer could return the computer within thirty days of purchase and receive a full refund); *Sherr v. Dell, Inc.*, No. 05-10097, 2006 WL 2109436 (S.D.N.Y. July 27, 2006) (holding an arbitration clause valid in a standard "approve-or-return"

contract in which Dell shipped a copy of its terms and conditions with the computer after a telephone order and the consumer did not return the product or refuse delivery).[4]

Sirius XM sent Rodal the Customer Agreement with the clear intent that it govern its relationship with Rodal promptly after the commencement of the trial subscription. *See supra* Part I. Rodal could have rejected the Customer Agreement (and therefore Sirius XM's satellite radio service) if he wanted to (*see supra* Part I.C), but instead he accepted the service. Rodal is therefore bound by the Customer Agreement and its arbitration requirement.

>    **2.      An Arbitrable Issue Exists Because Rodal's Claims Are Within The Scope Of The Arbitration Agreement.**

The first paragraph of Sirius XM's Customer Agreement states: "This customer agreement . . . between you and Sirius XM Radio Inc . . . applies to your paid, trial or other subscription . . ." *See* Ruhland Dec., Ex. B (opening paragraph). The Customer Agreement contains an arbitration provision. Specifically, Section I (**RESOLVING DISPUTES**) states in all-capital letters:

> PLEASE READ THIS PROVISION OF THIS SECTION CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. BY AGREEING TO ARBITRATION, YOU ARE HEREBY WAIVING THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY . . .

---

[4] Likewise, in *Bischoff v. DirecTV, Inc.*, the supplier provided the arbitration provision after the activation of the satellite programming service. The court nonetheless held the arbitration clause to be valid and enforceable. 180 F. Supp. 2d 1097, 1105, 1116 (C.D. Cal. 2002). The court concluded that even though the customer did not receive the agreement immediately, "[t]he more controlling issue is the economic and practical considerations involved in selling services to mass consumers which make it acceptable for terms and conditions to follow the initial transaction." *Id*. at 1105; *see also Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 426 F. Supp. 2d 1101, 1107 (E.D. Cal. 2006) (finding that a "shrinkwrap" end-user license agreement may form an enforceable contract, even though the buyer did not see it before purchasing software, where the agreement provided the buyer with the right to return the software if it did not agree to the license terms).

Id. § I.

The Customer Agreement provides that: "any Claim . . . whether related to this Agreement or otherwise, including past, present, and future Claims and disputes, and including any dispute as to the validity or applicability of this arbitration clause . . . shall be resolved, upon election by ether party, exclusively and finally by binding arbitration." *Id.* § I.2. Such broad language covers all disputes between the parties. When no ambiguity exists in an agreement to arbitrate, the language of the contract defines the scope of the dispute. *E.E.O.C. v. Waffle House*, 534 U.S. at 289. Courts have affirmed that this type of broad language is effective to bind parties to arbitration on a broad range of issues. *See, e.g.*, *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1221-22 (11th Cir. 2000) (rejecting vagueness and overbreadth arguments to an arbitration clause covering "any dispute between [the parties] or claim by either against the other . . ." and stating that "[b]y using this inclusive language, the parties agreed to arbitrate any and all claims against each other, with no exceptions"); *Schatt v. Aventura Limosuine & Trans. Serv., Inc.*, No. 10-22353, 2010 WL 4942654, at *4 (S.D. Fla. Nov. 30, 2010) (citing *Seifert*, 750 So. 2d at 637) (stating that an arbitration clause narrower than the one at issue here, purporting to cover claims "arising out of or relating to" a contract, has been interpreted as being broad enough "to encompass virtually all disputes between contracting parties"). Moreover, "federal courts interpret arbitration clauses broadly where possible." *Solymar Invs., Ltd. V. Banco Santander SA*, 672 F.3d 981,989 (11th Cir. 2012) (citing *AT&T Techs., Inc. v. Commn'cs Workers of Am.*, 475 U.S. 643, 649-50 (1986)). "The result of such broad interpretation is that 'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.'" *Id.* (quoting *First Options of Chicgo, Inc. v. Kaplan*, 514 U.S. 938, 945(1995)); *see also* *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Here, Rodal contends that Sirius XM called him after the trial subscription ended to offer him an opportunity to continue the service Rodal had accepted and received during the trial subscription.  Compl. ¶ 16.  By its terms, the arbitration clause extends to any claim "whether related to [the] Agreement or otherwise, including past, present, and future Claims and disputes."  Ruhland Dec., Ex. B § I.2.  A plain reading of the Customer Agreement confirms that Rodal's TCPA claims are subject to the arbitration clause in that Agreement, just like the district court held in evaluating the same claims and the same arbitration clause in *Knutson*.  *See e.g.*, *Green v.Life & Health of America*, 704 So.2d 1386, 1391 (Fla. 1998) ("We have long held that under contract principles, contract language that is unambiguous on its face must be given its plain meaning.") (citing cases).

This Court has previously compelled arbitration of TCPA claims that purportedly occurred after the termination of an agreement containing an arbitration clause.  In *Shea v. BBVA Compass Bancshares, Inc.*, No. 12-23324, 2013 WL 869526, at *2 (S.D. Fla. Mar. 7, 2013), the defendant bank moved to compel arbitration of a former customer's TCPA claims pursuant to an arbitration provision in the bank's Deposit Agreement.  The arbitration provision covered any "dispute, claim or controversy of any kind aris[ing] out of or relate[d] to any transaction involving [defendant's] account" and further stated that "This arbitration provision shall survive the termination of this Agreement and of the closing of your Account."  *Id*. at *2-3.  The plaintiff argued that he terminated his bank account and the Deposit Agreement prior to the defendant's conduct that allegedly violated the TCPA, and thus could not be bound to arbitrate.  *Id*. at *4.  The Court held that an arbitrator should address the challenge to, and scope of, the arbitration provision.  *Id*.  The Court also stated that, in its view, "the TCPA claim falls squarely under the broad language of the Arbitration Provision" and that "Plaintiff's TCPA claim . . . is a clearly foreseeable result of the performance of the Parties' actions pursuant to the Agreements and

related to Plaintiff's account with Defendant" even though the alleged TCPA violation occurred after the defendant closed his account. *Id*. at *5. The language in the arbitration provision here is similarly broad in that it covers any past, present or future disputes, and the alleged conduct at issue "clearly arises from the Parties' contractual relationship as embodied in the [Customer Agreement] and relates to Plaintiff's account with Defendant." *Id*. Indeed, Rodal alleges that Sirius XM was calling "his cellular phone to get Plaintiff to purchase a new subscription." Compl. ¶ 16. Thus, the fact that the alleged calls occurred after Rodal's trial subscription ended does not alleviate Rodal of his obligation to arbitrate.

The Court's finding in *Shea* is reinforced by the Supreme Court's command that issues regarding the scope of an arbitration clause be resolved in favor of arbitration. Through its decision in *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1745 (2011), the Supreme Court reaffirmed the "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." It further emphasized that the "overarching purpose" of the FAA "is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 1748. In short, Rodal must arbitrate his claim.

### 3. Sirius Has Not Waived Its Right To Arbitration

As to the third factor, above, there is no issue as to whether Sirius XM has waived its right to arbitration. Sirius XM has taken no action inconsistent with its intent to arbitrate this dispute and has moved to compel arbitration in its first responsive pleading. It therefore has not waived its right to arbitration, and Rodal must be compelled to arbitrate.

11

**B.      Alternatively, Rodal Has Failed To State A Claim Upon Which Relief Can Be Granted.**

**1.      Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), the Supreme Court has made clear that a complaint must contain more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* While the Court must treat as true well-pled factual allegations contained in a complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009); *see also Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (citation omitted) ("Formulaic recitations of the elements of a claim . . . are conclusory and are entitled to no assumption of truth."). A court is not bound to accept as true legal conclusions that are couched as factual allegations. *See Iqbal*, 556 U.S. at 678.

Rule 12(b)(6) authorizes the early dismissal of claims based on dispositive issues of law. "This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding." *Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989). Thus, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal quotation and citation omitted). *See also Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1325, 1347 (M.D. Ala. 2012) (quoting *Marshall Cty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "Taking the facts as true, a court may grant a motion to dismiss when, 'on the basis of a

12

dispositive issue of law, no construction of the factual allegations will support the cause of action.'").

> ### 2. Rodal Fails To Allege Any Facts To Support Allegations That Sirius XM Called His Wireless Number Using An Automated Telephone Dialing System.

A plaintiff fails to state a claim under the TCPA where he or she "provides no facts whatsoever about any automated or pre-recorded calls Defendant allegedly made." *Duran v. Wells Fargo Bank, N.A.*, 878 F. Supp. 2d 1312, 1316 (S.D. Fla. 2012). In *Duran*, this Court dismissed claims under the TCPA after finding that the plaintiff gave no facts to support the conclusory allegation that an automatic telephone dialing system ("ATDS") was used. *Id.* Rather, the plaintiff simply alleged that the defendant placed "many" non-emergency calls via an automatic dialing service to his cellular phone. *Id.* Courts in other jurisdictions have dismissed TCPA claims on similar grounds. *See, e.g.*, *Johansen v. Vivant, Inc.*, No. 12-C-07159, 2012 WL 6590551, at *2 (N.D. Ill. Dec. 18, 2012) ("Defendant argues that pleading the use of an ATDS, without providing any other supporting facts, makes the allegation a conclusory statement merely reciting the legal elements of a TCPA claim . . . . We agree."). *Ibey v. Taco Bell Corp.*, No. 12-cv-00583, 2012 WL 2401972, at *4 (S.D. Cal. June 18, 2012) (dismissing a complaint with prejudice because plaintiff failed to sufficiently plead the use of an ATDS when plaintiff stated "[i]n a conclusory manner . . . that Defendant used an ATDS" and stating that plaintiff's allegation that there "was no human intervention on the part of the Defendant" did not satisfy or allege the requirements of the statute); *Knutson v. ReplyA, Inc.*, No. 12-cv-01267, 2011 WL 291076, at *2 (S.D. Cal. Jan. 27, 2011) (granting Motion to Dismiss under Rule 12(b)(6) and pointing out that "[t]here is nothing in the complaint that allows the court to infer the calls were randomly generated or impersonal").

Here, too, Rodal alleges that Sirius XM placed the calls using an ATDS, but fails to include any facts in support of the allegation.  Compl. ¶¶ 17, 22, 27, 32.  Rodal claims that "Defendant's method of contacting Plaintiff is indicative of its ability to dial numbers without any human intervention in the calling process, which the FCC as opined is the hallmark of an automatic telephone dialing system (i.e. auto-dialer)."  Compl. ¶ 32.  But Rodal offers no explanation of what he means by "indicative" or whether that means anything other than "speculates."  Nor does he allege any facts that make it plausible to conclude that Sirius XM called his wireless number using an ATDS as opposed to a dialing system that complies with the TCPA.  S*ee Johansen,* 2012 WL 6590551, at *3 (noting that a TCPA plaintiff could describe the "lack of human response when he attempted to have a conversation with the 'person' calling him, the generic content of the message he received, or anything else about the circumstances of a call or message contributing to his belief it was pre-recorded or delivered via an ATDS").  Rodal's TCPA claim cannot survive without facts sufficient to comply with *Twombly*, and (in the alternative, in the event the Court does not send the parties to informal resolution and thereafter arbitration, if necessary) the Court should dismiss the complaint under Rule 12 for failure to state a claim.

### 3.    Rodal Did Not Allege That He Complied With The Informal Dispute Resolution Procedures Of The Customer Agreement

In order to pursue a claim against Sirius XM, Rodal must satisfy all conditions precedent before seeking formal resolution of a dispute. *See Assoc. Mech. Contr. V. Martin K. Eby Const.*, 271 F. 3d 1309, 1317 (11th Cir. 2001) ("[w]e must affirm [dismissal] if the district court was correct that even one clause was an unsatisfied condition precedent."); *Nat'l Envtl. Found. v. ABC Rail Corp.*, 926 F.2d 1096, 1097 (11th Cir. 1991) (dismissing claim for failing to comply with 60 day notice provision); *see also Bank of America v. Putnal Seed and Grain*, 965 So. 2d

14

300, 302 (Fla. 1st DCA 2007) (requiring compliance with 60 day notice provision to sustain a claim).

The dispute resolution section of the Customer Agreement requires that either party wishing to bring a claim against the other notify it of such a claim in writing, and wait for sixty (60) days after seeking an informal resolution before turning to formal resolution. *See id.* § I.1 ("Neither of us may start a formal proceeding . . . for at least (60) days after one of us notifies the other of a claim in writing"). This provision mandates the informal resolution of claims, or at a minimum the provision of notice 60 days before pursuit of a formal proceeding may be satisfied.

Because there is no allegation that Rodal notified Sirius XM of his intent to bring a claim in writing, prior to the filing of the instant suit, the Complaint should be dismissed.

## III.   CONCLUSION

For the reasons set forth above, Defendant Sirius XM respectfully requests this Court to dismiss Rodal's complaint and compel Rodal to comply with the Customer Agreement's requirements for seeking informal resolution of any dispute and, to the extent such efforts are unsuccessful, thereafter arbitrate the dispute. In the alternative, Sirius XM requests this Court to dismiss this action per Fed. R. Civ. P. 12(b)(6).

Dated: October 14, 2013                  Respectfully submitted,

                                         /s/ Mitchell W. Berger
                                         Mitchell W. Berger (FL Bar. No.  )
                                         Attorney for Defendant Sirius XM Radio Inc.
                                         BERGER SINGERMAN
                                         350 East Las Olas Blvd., Suite 1000
                                         Tel: (954) 525-9900
                                         Fax: (954) 523-2872
                                         Email: mberger@bergersingerman.com

15

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing as served upon all

persons registered to receive electronic notice through the Court's CM/ECF system on this 14th

day of October, 2013.

/s/ Mitchell W. Berger
MITCHELL W. BERGER